CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 2 5 2017
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LUNA INNOVATIONS INCORPORATED | ) ) ) |
| Plaintiff, | ) Civil Action No. 7:16-CV-304 ) |
| v. | ) By: Michael F. Urbanski ) United States District Judge |
| VERNER SCIENCE, INC. | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is a contract dispute, centering on defendant Verner Science, Inc.'s ("Verner") rejection of plaintiff Luna Innovations Incorporated's ("Luna") shipment of certain electronic equipment. This matter is before the court on Verner's Amended Motion for Judgment on the Pleadings. ECF No. 23.[1] Verner argues that Luna has failed as a matter of law to state a claim, because Verner made timely objection to Luna's shipment. See ECF No. 23, at 4. For the reasons that follow, the court converts Verner's motion to a motion for summary judgment, and concludes that a material factual dispute remains, which prevents the court from granting Verner judgment as a matter of law. Accordingly, Verner's motion, ECF No. 23, is **DENIED**.

---

[1] The motion is styled, "Motion to Amend Defendant's Motion for Judgment on the Pleadings, and Amended Motion." However, on February 28, 2017, the court granted the motion in part and allowed Verner to amend its original motion for judgment on the pleadings. See ECF No. 29. Accordingly, the court will consider the amended motion.

**I.**

Luna is a "leading manufacturer of optical technologies," ECF No. 24, at 6, while Verner is a merchant that deals in electronic test equipment in Taiwan, ECF No. 23, at 6. In late 2015, Verner entered into negotiations to purchase fiber-optic testing equipment from Luna.[2] ECF No. 24, at 5. Pursuant to these negotiations, on December 15, 2015, Luna provided Verner with a price quote, identifying a price of $119,500.00 for the requested equipment and accompanying software ("the Quote"). See ECF No. 1-2. The Quote provided for a discount of $24,500.00 (bringing the total cost to $95,000.00) if "the purchase order is received by close of business 12/16/2015." Id. No shipping date was specified.

In response, Verner sent Luna a Purchase Order the next day.[3] ECF No. 1-3. The Purchase Order differed in several respects from the Quote. It omitted the "Desktop Analysis Software" and "Spot Scan feature" that had been included in the Quote, and accordingly authorized a purchase price of only $78,000.00. Id. Moreover, the shipping date was specified as "by advice," and the purchase order asked that Luna "[e]nter this order in accordance with the prices, terms, delivery method, and specifications listed above." Id.

Luna and Verner continued to negotiate the terms of the sale. During these ensuing negotiations, Luna made clear that, in order to effectuate the sale at the discussed price, "[it]

---

[2] These negotiations took place primarily between Joe Berté, Luna's director of Sales for the Western United States, and Yuni "Hazel" Lai, a Verner employee in Taiwan.

[3] The Purchase Order provided to the court by Luna is dated "16 Dec. 2015," but the signature of Yuni Lai is dated "2015/12/30." See ECF No. 1-3. This accords with the parties' email correspondence, which disclose two emails from Lai that purport to send the Purchase Order to Luna—the first on December 16, ECF No. 24-2, at 27–28, and the second on December 30, id. at 24. Based on the correspondence between the parties, it appears that these two purchase orders differed slightly in price and terms. Luna notes these two dates and raises "the actual date of the issuance of Verner's Purchase Order" as a material fact in dispute. ECF No. 24, at 8. Indeed, Luna is correct that "Verner claims [the Purchase Order] was issued on December 16, 2015[;] Luna claims it was issued on December 30, 2015." Id.; ECF No. 23, at 2. However, neither party has disputed the authenticity of the correspondence submitted to the court, and, as such, the court concludes that the Purchase Order was sent twice, and that the two versions may have differed slightly in content. In any event, any differences in the two purchase orders are not material to this dispute.

2

need[ed] to ship by year end." ECF No. 24-2, at 24, 26. Verner re-sent its Purchase Order on December 30, 2015. Id. at 24. In response, Luna sent Verner a Sales Order.[4] ECF No. 1-4. The Sales Order specified that the shipping date as "on or before 01/15/2016," which accommodated Luna's insistence on shipment before the end of the year. Id. Moreover, it reincorporated the standard terms and conditions from Luna's Quote, and asked that Verner notify Luna immediately of any term of the Sales Order "is not correct in any way," so that Luna "may make the needed corrections before [the] order is processed." Id. at 2.

Verner responded immediately, and asked that Luna "[p]lease ship the goods by our notice, not on or before 01/15/2016." ECF No. 24-2, at 22. Luna protested, "We need to ship your instrument today in order to meet our year-end commitments and, therefore, in order to provide your discount." ECF No. 3-1, at 5. Over the next day the parties continued in this vein: Luna maintained that shipping must take place before the New Year, and Verner was equally adamant that shipping should be by notice. Luna offered delayed payment terms; Verner's position did not change. Eventually, after informing Luna that its customer "will cancel the [Purchase Order] if we need the confirmation today," ECF No. 24-2, at 21, Verner offered Luna an ambiguously worded alternative, in lieu of cancellation of the Purchase Order: "Or you can accept return good [sic] if there is problem with our customer." Id. at 20.

In its Counterclaim, Verner clarified that it intended to inform Luna that "acceptance of the shipment by Verner would be by reservation of right to return." ECF No. 3, at 4.

---

[4] The Sales Order is dated "12/17/15," though neither party disputes that it was sent at the end of December. Verner claims the Sales Order was sent on December 31, 2015, ECF No. 23, at 2, while Luna argues it was sent on December 30. ECF No. 24, at 4. This discrepancy can likely be attributed to the thirteen-hour time difference between Roanoke, Virginia and Taiwan.

3

However, Luna "understood this email to be accepting Luna's condition that the [e]quipment had to be shipped on December 31, 2016." ECF No. 24-1, at 4. The provision that Luna could "accept return good," was thought by Luna to denote a potential return in the event of a warranty defect—a prospect envisioned by Luna's standard terms and conditions. Id.; see ECF No. 1-2, at 3 (Section 5: "Warranty; Restrictions on Use").

Luna shipped the equipment on the last day of 2015. On January 4, 2016, Verner contacted Luna to request "the info regarding if we have to return the [equipment]." ECF No. 24-2, at 20. Luna responded that any return, "would require [a] reason/explanation." Id. at 19. Verner received the equipment on January 20, 2016. ECF No. 24, at 10. The parties did not correspond again until March 9, 2016, when Verner indicated that it would need to return the equipment because Verner's customer found it unsuitable. ECF No. 24-2, at 7. Despite Luna's warning that it would not accept the return, Verner returned the unused equipment to Luna. ECF No. 3, at 4.

Luna filed suit on June 30, 2016, asking the court to require Verner to pay the $78,000.00 price of the equipment. ECF No. 1. On August 25, 2016, Verner filed its Answer and Counterclaim, in which it asked for "incurred expenses for inbound airfreight, customs clearance, outbound airfreight charges and other costs," incurred in connection with returning the equipment to Luna. ECF No. 3, at 4.

In February 2017, Verner filed its Amended Motion for Judgment on the Pleadings.[5] ECF No. 23. Luna responded, ECF No. 24, and the court conducted a hearing on February 28, 2017. ECF No. 27.

---

[5] The motion was amended to correct several typographical errors and to assert additional facts. See ECF Nos. 22, 23.

## II.

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed." "A motion for judgment on the pleadings pursuant to Rule 12(c) is analyzed under the same standard as a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss." Mendenhall v. Hanesbrands, Inc., 856 F. Supp. 2d 717, 723 (M.D.N.C. 2012) (citing Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002)).

> Therefore, a motion for judgment on the pleadings "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."

Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)); see Booker v. Peterson Cos., 412 Fed. App'x 615, 616 (4th Cir. 2011) ("In order to survive a motion for judgment on the pleadings, the complaint must contain sufficient facts 'to raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face.'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007))).

But, motions to dismiss and motions for judgment on the pleadings are not identical: "'[u]nlike on a Rule 12(b)(6) motion . . . on a Rule 12(c) motion the [C]ourt may consider the Answer as well.'" Mendenhall, 856 F. Supp. 2d at 724 (brackets and ellipsis in original) (quoting Alexander v. City of Greensboro, No. 1:09-CV-293, 2011 WL 3360644, at *2 (M.D.N.C. Aug. 3, 2011)). "The 'factual allegations in the [A]nswer are taken as true to the extent they have not been denied or do not conflict with the [C]omplaint.'" Id. (brackets in

original) (quoting Farmer v. Wilson Hous. Auth., 393 F. Supp. 2d 384, 386 (E.D.N.C. 2004)). Moreover, "[i]n 'determining a motion for judgment on the pleadings, the [C]ourt may consider documents incorporated by reference into the pleadings.'" Id. (second brackets in original) (quoting Farmer, 393 F. Supp. 2d at 386). However, "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." A. S. Abell Co. v. Baltimore Typographical Union No. 12, 338 F.2d 190, 193 (4th Cir. 1964) (quoting Fed. R. Civ. P. 12(c)). The decision to exclude matters outside the pleadings is "discretionary with the court." Id.

Should the court consider matters outside the pleadings, the motion for judgment on the pleadings may be treated as a motion for summary judgment. Pursuant to Federal Rule of Civil Procedure 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence

of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc. v. Kimberly–Clark Corp., No. 13-2044, 2014 WL 2871492, at *1 (4th Cir. June 25, 2014) (internal alteration omitted) (citing Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." Anderson, 477 U.S. at 255. However, the non-moving party "must set forth specific facts that go beyond the 'mere existence of a scintilla of evidence,'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252), and show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (citing Perini Corp. v. Perini Const., Inc., 915 F.2d 121, 124 (4th Cir. 1990)).

## III.

In its motion for judgment on the pleadings, Verner characterizes the chronology as follows:

> On December 31, 2015, Plaintiff transmitted an undated acceptance of the purchase order, and changed the shipment day from a date advised by Defendant to shipment that very same day, December 31st, 2015. Verner immediately that day rejected the December 31st shipment date by e-mail; Plaintiff responded by offering extended payment terms. Verner immediately declined this offer and again rejected the proposed shipment. Verner informed Plaintiff on December 31st, 2015, that if Plaintiff persisted, Verner would cancel the order, or in the alternative reserve the right to return the goods. The reply from Plaintiff came on January 4th, 2016, in an e-mail to Verner advising that they had already shipped the goods on December 31, 2015.

ECF No. 23, at 6. Accordingly, Verner argues that Luna breached the contract for sale by failing to abide by the "by advice" shipping date contained in Verner's Purchase Order. Id. at 9–10.[6] Moreover, Verner's objection to Luna's modification of the shipment terms was timely. Id. at 12.

Regarding Verner's offer that, in lieu of cancellation of the purchase order, Luna could "accept return good [sic] if there is problem with our customer," Verner argues that "[t]here is no evidence that Luna accepted" this condition, because the parties did not agree to a return time limit under Va. Code § 8.2-326. Id. at 13; see also In re Niblett, 441 B.R. 490, 495 (Bankr. E.D. Va. 2009) (holding that written terms specifying "sale or return," including the time period within which the goods could be returned, are required to create a sale or return contract). Rather than sending the equipment, Verner argues "Luna's initial

---

[6] Verner anticipates the argument that "by advice" was an ambiguous term, and responds that, under Virginia's codification of the parol evidence rule, Va. Code § 8.2-202, that term was clarified in a December 16th email from Verner that specified that shipping was to be by Verner's advice. Id.

8

options should have been as prescribed in [Va. Code] § 8.2-703": withholding delivery, reselling and recovering damages, recovering damages for non-acceptance, or cancelling the contract. ECF No. 23, at 13–14. Finally, Verner argues that its rejection was not wrongful, and, even if it was, the rejection was procedurally effective, and thus should not expose Verner to liability for the price of the equipment. Id.; see Integrated Circuits Unlimited v. E.F. Johnson Co., 875 F. 2d 1040, 1042 (2d Cir. 1989) ("[I]f a buyer's rejection is procedurally effective—even though wrongful—a seller is barred from recovering the contract price.").

In its memorandum in opposition, ECF No. 24, Luna tells a different story. Luna argues that, though Verner initially objected, it eventually "accepted the shipment terms provided by Luna because it knew it would not receive a discount . . . if the [equipment] shipped later." ECF No. 24, at 12. Moreover, Luna argues that "Verner neither could reject the [equipment] on December 31, 2015, prior to delivery . . . nor was its rejection 'of right.'" Id. Rather, Verner accepted delivery, kept the equipment for two months, and then attempted to return it. Id.

In the alternative, Luna first argues that, even if Verner did not accept the revised shipping term, the default shipping term "within a reasonable time," under Va. Code § 8.2-309(1) would apply, and was satisfied by Luna's immediate shipment. Id. at 16–17. Second, if the court determines that the "by advice" shipping term in Verner's purchase order controls, then Luna argues that that term is ambiguous, and Verner's acceptance of the shipped equipment operates as a waiver of any objection Verner could have raised to Luna's shipment schedule. Id. at 14–15.

## A.

Before turning to the merits, the court must decide a preliminary issue. Luna argues that Verner's motion for judgment on the pleadings should be converted to a motion for summary judgment because it "references matters outside the pleadings," and because "Verner has . . . failed to place all of the email correspondence and course of dealing between the parties into the record. ECF No. 24, at 6. The "matters outside the pleadings" to which Luna refers are translations of headers from emails sent from Taiwan by Lai, which are attached to Verner's original motion for judgment on the pleadings. ECF No. 24, at 11; see ECF No. 22. These exhibits merely translate the date and timestamps of emails into the English language, with the exception of a December 31 email from Lai, which Verner translates in full. See ECF No. 22-2.

Verner's translation exhibits are not integral to the court's analysis of the issues, for the simple reason that these translations are largely reproduced in exhibits Verner attached to its answer and counterclaim. See ECF No. 2. The emails Verner attached to its answer may be considered by the court in ruling on the judgment on the pleadings. See Mendenhall, 856 F. Supp. 2d at 724 (In ruling on a judgment on the pleadings, the court may consider the answer, and any documents incorporated by reference therein.). Accordingly, the translations attached to Verner's motion for judgment on the pleadings would not compel the court to convert this motion to one for summary judgment.

However, the court ultimately agrees with Luna that the additional emails attached to Luna's memorandum in opposition merit consideration. See ECF No. 24-2. These emails flesh out the lengthy negotiation between the parties, and, as will be discussed infra, provide

10

valuable context that aids the court in considering the issues of contract formation and acceptance vel non of the equipment. Verner has not contested the validity of these emails, in any filing or in the hearing conducted contemporaneously to their introduction into the record. Accordingly, the court, in its discretion, will consider these emails, and will convert Verner's motion for judgment on the pleadings into a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B.**

Verner and Luna take different positions on the issue of contract formation. Verner, in its motion, appears to argue that Luna's Quote was an offer conditioned on Verner's issuance of a Purchase Order on December 16, and that Verner fulfilled that condition, thereby creating a binding contract.[7] ECF No. 23, at 9–10. In the February 28, 2017 motions hearing, however, Verner argued for the first time that no binding contract existed between the parties: because Verner specified in its Purchase Order that shipment should be "by advice"—which Verner argues allows for the possibility that shipment never takes place—Luna and Verner were not obligated to ship the equipment and pay for it, respectively, and therefore no binding contract existed. Luna meanwhile, has maintained that its Quote was merely "an invitation to enter into negotiations and . . . not an offer." ECF No. 24, at 10. Thus, Luna views Verner's Purchase Order as an offer, which was accepted by Luna's Sales Order—albeit with nonconforming terms. Id. at 10–11.

Ultimately, the court agrees with Luna that a binding contract was formed. To start with the Quote, it is unnecessary to decide if it should be viewed as an offer, or merely an

---

[7] Verner's motion is not entirely clear on this point: at times Verner appears to suggest that its Purchase Order should be viewed as a counteroffer, rather than an acceptance, and that Luna's subsequent Sales Order represents an acceptance with nonconforming terms. See ECF No. 23, at 6.

11

invitation to begin negotiations. The Quote and Purchase Order differed in price, terms, equipment, and specifications. See ECF Nos. 1-2, 1-3. If the Quote is viewed as an invitation to enter negotiations, the Purchase Order was an initial offer; if the Quote instead represents an initial offer, then the Purchase Order was a counteroffer, not an acceptance. See Princess Cruises, Inc. v. Gen. Elec. Co., 143 F.3d 828, 834 (4th Cir. 1998) ("Under the common law, an acceptance that [materially] varies the terms of the offer is a counteroffer which rejects the original offer. . . . Virginia follows the same rule."[8] (citations omitted) (citing Restatement (Second) of Contracts § 59 (Am. Law Inst. 1981), and Chang v. First Colonial Sav. Bank, 410 S.E.2d 928, 931 (Va. 1991))).

Thus, the Purchase Order constituted an offer. Luna's Sales Order, in turn, confirmed the price and equipment specifications in the Purchase Order, and operated as an acceptance. Accordingly, when Luna sent the Sales Order to Verner, a binding contract was formed. The Sales Order did not accept all the terms in the Purchase Order, however. As discussed, it reincorporated the terms provided in Luna's Quote, and changed the shipping term from "by advice" to "Delivery: Ship on or before 01/15/2016." ECF No. 1-4. The different shipping terms in the offer and acceptance did not prevent the formation of a

---

[8] The parties do not address what law applies to this dispute over a contract formed through emails between Virginia and Taiwan. The court concludes Virginia law applies, for two reasons. Cf. DIRECTV, Inc. v. Imburgia, 136 S. Ct. 463, 464 (2015) ("[T]he interpretation of a contract is ordinarily a matter of state law . . . ."). First, "[b]ecause choice of law principles do not fall within the ambit of federal law, 'federal courts in diversity of citizenship cases are governed by the conflict of laws rules of the courts of the states in which they sit.'" Scottsdale Ins. Co. v. Harleysville Ins. Co., No. 1:11CV33, 2013 WL 6813905, at *5 (citing Griffin v. McCoach, 313 U.S. 498, 503 (1941)). "Virginia choice-of-law decisions require the effect of the contract to be governed by the law of the place where the contract was made." Ryder Truck Rental, Inc. v. UTF Carriers, Inc., 790 F. Supp. 637, 641 (W.D. Va. 1992) (citing Poole v. Perkins, 101 S.E. 240 (Va. 1919)); Hunter Innovations Co. v. Travelers Indem. Co. of Conn., 753 F. Supp. 2d 597, 602 (E.D. Va. 2010) ("[I]n Virginia, a contract is made at the place where the final act is done which is necessary to make the contract binding." (internal quotation marks omitted)). In this case, as will be explained infra, the court concludes that the contract was formed when Luna sent Verner the Sales Order from Virginia. Second, Luna's Quote contains a choice-of-law provision that specifies that its terms "shall be interpreted in accordance with the substantive laws of the Commonwealth of Virginia." ECF No. 1-2, at 6. No subsequent writing by either party contradicts this provision.

contract, see Va. Code Ann. § 8.2-207(1) ("A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon . . . ."), but the court must now attempt to determine which shipping term, if either, controlled.

Va. Code Ann. § 8.2-207(2) provides that

> additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
> (a) the offer expressly limits acceptance to the terms of the offer;
> (b) they materially alter it; or
> (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

Subsection (a) is not controlling: Verner's Purchase Order asked that Luna "[e]nter this order in accordance with" its terms, ECF No. 1-3, but did not expressly condition the offer on completely conforming acceptance. Subsections (b) and (c), however, each potentially exclude both parties' shipping terms from the contract. See Power Oaragon, Inc. v. Precision Tech. USA, Inc., No. 7:09CV00542, 2009 WL 700169, at *10 (W.D. Va. Mar. 17, 2009) (discussing the impact of differing terms under § 8.2-207 and holding, "[c]ourts interpreting these provisions in the UCC have applied a 'knockout rule' to 'knock out' any conflicting terms in forms such that the conflicting terms do not become part of the parties' agreement." In such a case, the resulting contract will include "only non-conflicting terms and any others supplied by the U.C.C." (citing Daitom, Inc. v. Pennwalt Corp., 741 F.2d 1569, 1579 (10th Cir. 1984))).

13

The shipping term in Luna's Quote may constitute a material alteration of Verner's Purchase Order. There is some precedent that supports this argument. W.S. Hoge & Bro., a Corp. v. Prince William Coop. Exch., Inc., 126 S.E. 687, 689 (Va. Ct. Spec. App. 1925) (where original shipment term read "To be shipped when ordered," and nonconforming shipment term in acceptance read "To be shipped when ordered prior to October 1, 1920," "[t]he change in the date of shipment was a material variation"). However, the court is hesitant to rely on this 1925 case from the Virginia Court of Appeals, given the general rule that "whether an additional term in a written confirmation constitutes a 'material alteration' is a question of fact to be resolved by the circumstances of each particular case." In re Cotton Yarn Antitrust Litig., 505 F.3d 274, 295 (4th Cir. 2007) (Williams, C.J., concurring in part and dissenting in part) (quoting N & D Fashions, Inc. v. DHJ Indust., Inc., 548 F.2d 722, 726 & n.7 (8th Cir. 1976))); see also MHD-Rockland Inc. v. Aerospace Distribs., No. CCB-13-2442, 2014 WL 31677, at *5 n.5 (D. Md. Jan. 3, 2014) (Under Maryland's codification of U.C.C. § 2-207, a term constitutes a material alteration "[u]nless it would be both fair and commercially sound to assume that failure to object within a reasonable time to a proposal for additional terms is tantamount to an assent to their inclusion." (quoting Usemco, Inc. v. Marbro Co., Inc., 483 A.2d 88, 94–95 (Md. Ct. Spec. App. 1984))). Instead, the court concludes that this issue cannot be resolved solely on the exhibits and arguments submitted by the parties. Facts not before the court will bear on the materiality of the shipment terms, and it would be premature to decide this issue without further factual development. Cf. id. at 296 (recognizing, under New York's version of § 2-207, "the importance of trade practices to the material alterations analysis"); Va. Code Ann. § 8.2-207

cmt. 5 (suggesting that altered terms are material where they "involve [an] element of unreasonable surprise").

Likewise, the court is ill-equipped to determine whether Lai objected under § 8.2-207(2)(c). Neither party disputes that, on the day after she received Luna's Sales Order, Lai requested that the "by advice" term be reinstated. However, the parties continued to correspond, and eventually, Lai suggested, "[o]r you can accept return good [sic] if there is problem with our customer." ECF No. 24-2, at 20. Verner suggests that this was meant to reserve a right of return; Luna disagrees, and suggests that Lai was merely insisting on a return in the event of a warranty issue, and in fact rescinded her initial objection to the Luna's shipment term. Though the court finds Verner's explanation more plausible,[9] on summary judgment, inferences are to be drawn in favor of the non-moving party—in this case, Luna. Glynn, 710 F.3d at 213. Viewed in this light, the court cannot definitively conclude that Lai's correspondence operated as a notification of objection to the shipping term in Luna's Sales Order.[10]

Even if the court could determine whether subsections (b) or (c) of § 8.2-207(2) operated to "knock out" the parties' differing shipment terms, questions of fact would remain. As discussed supra, if these terms are knocked out of the contract, the U.C.C. supplies the omitted term. Power Oaragon, Inc., 2009 WL 700169, at *10. As Luna correctly points out, Va. Code Ann. § 8.2-309 provides that "[t]he time for shipment or delivery or

---

[9] It would be surprising for Lai, by way of compromise, to insist on a warranty/return provision that was already incorporated into the terms of the contract. See ECF No. 1-2, at 3 ("Warranty; Restrictions on Use" section of the Quote).

[10] At this point another complication reveals itself. Section 8(d) of the Sales Terms and Conditions contained in Luna's Quote, ECF No. 1-2, and incorporated into the Sales Order, specifies that, "[p]rior to the date of shipment, Customer may cancel its order, subject to a cancellation fee." Lai's enigmatic response could be read as fulfilling this term, and cancelling Verner's order. Again, this is a factual question the court cannot resolve on summary judgment.

any other action under a contract if not provided in this title or agreed upon shall be a reasonable time." ECF No. 24, at 12–13. Va. Code Ann. § 8.2-309 cmt. 1 elaborates,

> The reasonable time under this provision turns on the criteria as to "reasonable time" and on good faith and commercial standards set forth in Sections 1-203, 1-204 and 2-103. It thus depends upon what constitutes acceptable commercial conduct in view of the nature, purpose and circumstances of the action to be taken.

Comment 1 reinforces the conclusion that what constitutes shipment within a "reasonable time" is a factual question that is governed by the general circumstances between the parties. The court cannot decide such an issue by looking only to a series of emails between the representatives of Luna and Verner, let alone conclude as a matter of law that Verner was correct in determining that Luna's shipment date was unreasonable.

If, on the other hand, the court concluded that §§ 8.2-207(2)(b) & (c) did not apply (and that Luna's shipment term controlled), the question would still remain as to whether Lai's email operated to cancel the contract, in accordance with the cancellation provisions of Luna's Sales Quote. See ECF No. 1-2; supra p. 15 n.10.

Too many ambiguities remain to resolve this issue on summary judgment. These ambiguities can likely be clarified by evidence that is not currently before the court. Luna's memorandum in opposition refers to "verbal communications" regarding the shipment and payment terms, ECF No. 24, at 8, and Joseph Berté, by declaration, references "a series of phone calls" he made to Lai. ECF No. 24-2, ¶ 22. Moreover, Lai, by email, reacts with surprise that Luna would not consent to shipment by advice: "I always say shipping by the notice and you never refuse it, but today you told me it must be shipped today? Unbelievable!" ECF No. 24-2, at 21. Though the parties agreed before the court that they

had never done business before, this email strongly suggests prior interactions between Lai and Berté (or at a minimum trade custom of which both parties were aware) that led to Lai's incredulity over Berté's response to her suggested shipping terms. Without more information, however, the court can only speculate.

### IV.

Verner asks this court, based only on the parties' arguments and emails attached as exhibits, to conclude as a matter of law that it is entitled to judgment. To do so, the court would have to determine that no material factual dispute remains—in other words, that the disagreements between the parties as to the meaning of ambiguous emails, commercial reasonableness in light of course of performance and usage of trade, and even whether a binding contract was formed, are all immaterial. The court declines to do so. On the contrary, this matter is replete with material factual disputes that preclude summary judgment in Verner's favor. As such, Verner's motion, ECF No. 23, is **DENIED**.

An appropriate Order will be entered.

Entered: 04-25-2017

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge